**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

EMILIANO P.,

                                        Plaintiff,

        v.                                                      No. 6:23-CV-0708
                                                                (DNH/CFH)
COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

**APPEARANCES:**                              **OF COUNSEL:**

HILLER COMERFORD INJURY & DISABILITY LAW   JUSTIN GOLDSTEIN, ESQ.
6000 N. Bailey Ave., Ste. 1A
Amherst, New York 14226
_Attorney for Plaintiff_

SOCIAL SECURITY ADMINISTRATION              KATHRYN POLLACK, ESQ.
Office of the General Counsel
6401 Security Boulevard
Baltimore, Maryland 21235
_Attorney for Defendant_

**CHRISTIAN F. HUMMEL**
**United States Magistrate Judge**

                    <u>**REPORT-RECOMMENDATION & ORDER**</u>

        This matter was referred to the undersigned for report and recommendation by

the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. §

636(b) and Northern District of New York Local Rule 72.3.  This case has proceeded in

accordance with General Order 18 of this Court which sets forth the procedures to be

followed when appealing a denial of Social Security benefits.  Plaintiff filed a motion for

judgment on the pleadings, defendant cross moved for judgment on the pleadings, and

plaintiff filed a reply.  _See_ Dkt. Nos. 9, 15, 16.  For the reasons discussed below, it is

recommended that the Commissioner's decision be vacated, and the matter be remanded to the Social Security Administration for further proceedings consistent with this report and recommendation.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on November 8, 1970.  T. at 255.[1]  His highest level of education is 10th or 11th grade.  T. at 33, 449.  Plaintiff filed for supplemental security income ("SSI") on January 14, 2009.  T. at 83.  Plaintiff's 2009 claim was denied, at least at the initial level, some time before August 13, 2010.  *See* T. at 84 (referencing a prior "state agency medical consultant's physical assessment.").  Administrative Law Judge ("ALJ") John M. Lischak determined that Plaintiff had been under a disability from January 14, 2009, to the date of his decision, August 13, 2010.  T. at 85-86.

Plaintiff was incarcerated from November 2015 until February 13, 2020.  *See* T. at 194 ("[Plaintiff has] been accused or convicted of a felony or an attempt to commit a felony in the state of New York"), Dkt. No. 9 at 8-9 ("[Plaintiff] received benefits until approximately 2015 when he was incarcerated for a period of greater than 12 consecutive months."), Dkt. No. 15 at 11 n.5 ("Plaintiff was incarcerated for more than one year, from November 2015 through February 2020.").  Plaintiff's eligibility for benefits was suspended during his incarceration and terminated after 12 consecutive months of suspension.  Dkt. No. 9 at 8-9; Dkt. No. 15 at 13; *see* 20 C.F.R. §§ 416.201, 416.1325, 416.1335 (defining "*Resident of a public institution*" to mean "*inmate* of a

---

[1] The Administrative Transcript is found at docket number ("Dkt. No.") 8.  The Court will refer to citations from the Administrative Transcript as "T." and will cite to the Administrative Transcript's Bates-stamped page numbers, rather than the pagination generated by the Court's electronic filing system ("CM/ECF").  All other citations to docket entries refer to the pagination generated by CM/ECF, located at the header of each page.

public institution"; making recipients of SSI "ineligible for benefits" from the first full month of residency in a public institution until the earliest day of the month of their release; and terminating eligibility "following 12 consecutive months of benefit suspension.").

Plaintiff states that he filed an application for SSI on February 14, 2020.  Dkt. No. 9 at 9; *see* T. at 38.  Plaintiff provides that this application was denied on December 4, 2020.  *Id.*  No materials from this claim appear in the present record, although a query of Plaintiff's Certified Earnings Records reflect a possible matching application.  *See* T. at 204 (listing alleged onset dates ("AODs") from prior claims, including January 14, 2009, which post-dates the AOD in Plaintiff's 2009 claim and pre-dates the AOD in Plaintiff's present claim.).

Plaintiff completed an application for SSI on May 27, 2021, alleging disability beginning December 5, 2020.  T. at 193.  He alleges disability as a result of injuries that cause constant pain.  T. at 227, 232.  Plaintiff also alleges "BI-POLAR; DEPRESSION; ANXIETY; SOCIAL PHOBIA[]S; HEART PROBLEMS; BREATHING PROBLEMS; BACK PROBLEMS; DIABETES[;] HIGH BLOOD PRESSURE; SEASONAL ALLERGIES; SMOKERS COUGH; HEAT BUMPS/BREAKS OUT WHILE OUTSIDE IN THE SUN; DRUG USE OPIOIDS; STOMACH CRAMPS/PAINS."  T. at 43.

Plaintiff's application was initially denied on August 5, 2021.  T. at 56-57.  He submitted a request for reconsideration on August 10, 2021.  T. at 108.  His claim was reconsidered and denied on December 10, 2021.  T. at 75-76.  Plaintiff requested a hearing before an ALJ on December 13, 2021, and a telephone hearing was scheduled for August 8, 2022.  T. at 121, 154.

ALJ Jeremy Eldred conducted the administrative hearing and heard the testimony of Plaintiff, represented by nonattorney representative Matthew Nutting, as well as the testimony of Vocational Expert Linda Vause ("the VE"). *See* T. at 26-40. Plaintiff testified to injuries he suffered in a car accident, which left him with a plate in "his right side pelvis area," screws in his right ankle, and three deteriorating lower discs. T. at 33.

On August 18, 2022, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act ("SSA"). T. at 22. Plaintiff requested that the Social Security Appeals Council review the ALJ's decision on November 5, 2022. T. at 191. On February 28, 2023, the ALJ's decision became the final decision of the Commissioner. Dkt. No. 1-2 at 2.[2] Plaintiff timely commenced this action on April 10, 2023. Dkt. No. 1 at 1.

## II. LEGAL STANDARDS[3]

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1388(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See*

---

[2] The copy of the Notice of Appeals Council Action included in the Administrative Record is dated April 14, 2023. T. at 1. This post-dates April 10, 2023, when Plaintiff filed the present action. *See* Dkt. No. 1 at 2. Plaintiff has provided the correct version of the Notice of Appeals Council Action, dated February 28, 2023. Dkt. No. 1-2 at 2.

[3] Although the Supplemental Security Income program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

*Johnson v. Bowen*, 817 F.2d 983, 985-86 (2d Cir. 1987); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise."  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citation, emphasis, and internal quotations marks omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson*, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

**B. Standard for Benefits**

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ."  42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" *Id.* § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  *See id.* § 423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  *Id.* § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  *Ventura v. Barnhart*, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.

> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry*, 675 F.2d at 467 (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  *See DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing *Berry*, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  *Id.* (citing *Berry*, 675 F.2d at 467).

### III. THE ALJ'S DECISION

In his August 18, 2022, decision, the ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims.  T. at 16-17.  At Step One, the ALJ determined that Plaintiff had not been engaged in substantial gainful activity since May 24, 2021.  T. at 17.  At Step Two, the ALJ determined that Plaintiff has the following severe impairment: "degenerative changes of the lumbosacral spine."  *Id.*  At Step Three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 ("the Listings").  T. at 17-18.

At Step Four, the ALJ found, based on the above-stated impairments, that Plaintiff has the RFC to perform "medium work" with the following postural limitations: "he can climb ramps or stairs frequently; can climb ladders, ropes, or scaffolds occasionally; can kneel, crouch, or crawl frequently; and can stoop frequently."  T. at 18. The ALJ noted that Plaintiff has no past relevant work.  T. at 21.  The ALJ also noted that Plaintiff was "50 years old, which is defined as an individual closely approaching advanced age" as of the application date, that Plaintiff has a limited education, and that transferability of job skills is immaterial because Plaintiff has no past relevant work.  *Id.* The ALJ then determined, at Step Five, that there are jobs that exist in significant numbers in the national economy which Plaintiff would be capable of performing.  *Id.* Thus, the ALJ determined that Plaintiff has not been under a disability, as defined in the Social Security Act, from May 24, 2021, to the date of the ALJ's decision, August 18, 2022.  T. at 22.

## IV. ARGUMENTS

Plaintiff argues that the ALJ erred by failing to consider evidence from his 2009 application for SSI, in which he was found to be disabled at the administrative hearing level.  Dkt. No. 9 at 8-9.  Plaintiff contends that the ALJ was specifically required to obtain Plaintiff's prior claim files pursuant to the Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX"), which stipulates the incorporation of prior claim files in cases involving *res judicata* issues or reopening prior claims.  *Id.* at 9-10.  Plaintiff argues that he should "be found disabled under *res judicata* and collateral estoppel" because of his successful claim in 2009, given that he is alleging the same disability.  *Id.* at 10.  Plaintiff further argues that, "even if the

reopening and *res judicata* issues [are] not indicated, the earlier evidence is still relevant and should be obtained to provide a longitudinal picture of plaintiff's medical and educational history and to compare the current evidence to the evidence in the prior claim's file." *Id.* at 11.

Plaintiff argues next that the ALJ failed to meet his burden at Step Five when he relied solely on the Medical-Vocational Guidelines Rules, instead of the testimony of the VE. Dkt. No. 9 at 12-13. Plaintiff points out that "the one hypothetical question presented to the vocational expert . . . consisting of the RFC with additional environmental and stooping limitations precluded the performance of medium work." *Id.* at 13. Plaintiff contends that the proposed environmental limitations are supported by all three opinions that addressed physical functioning. *Id.* at 13-14. Plaintiff contends further that the combination of postural limitations incorporated in the RFC might be preclusive to work at the medium level, and that the VE should have been questioned on the subject. *Id.* at 14.

Finally, Plaintiff asserts that the ALJ failed to support the RFC determination with substantial evidence and failed to meet the appropriate legal standard when evaluating the medical opinions. Dkt. No. 9 at 15. Specifically, Plaintiff contends that the ALJ failed to appropriately consider supportability and consistency during his persuasiveness analysis. *Id.* at 18. Plaintiff argues that the ALJ inappropriately relied on a gap in Plaintiff's treatment record which exists because the ALJ failed to incorporate the prior claim files. *Id.* at 20. Plaintiff argues that the ALJ inappropriately relied on Plaintiff's lack of testimony regarding breathing issues, yet the record demonstrates the presence of these issues. *Id.* at 20-22. Plaintiff contends that the

ALJ erroneously dismissed the opinion of consultative examiner Dr. Fkiaras. *Id.* at 22-25.

Defendant asserts that the ALJ was not required to obtain Plaintiff's prior claim file based on its general relevance. Dkt. No. 15 at 11-12. Defendant points out that Plaintiff never requested the ALJ to obtain the prior claim file, and Plaintiff's representative indicated that the record was complete at the administrative hearing. *Id.* at 12. Defendant argues that *res judicata* and reopening issues are not present, because Plaintiff was required to make a new application after the termination of his benefits. *Id.* at 12-13. Defendant contends that Plaintiff asserted disability as of December 5, 2020, and not the AOD of the 2009 application. *Id.* at 14.

Defendant next argues that the ALJ properly concluded that the limitations assigned in the RFC would have little or no effect on the occupational base available to Plaintiff. Dkt. No. 15 at 15. Defendant argues that an ALJ's assignment of non-exertional limitations does not require input from a VE and does not preclude reliance on the Medical-Vocational Guidelines Rules. *Id.* at 15-16.

Lastly, Defendant argues that the ALJ thoroughly considered the evidence and supported his RFC determination with substantial evidence. Dkt. No. 15 at 16-17. Defendant argues that the ALJ's analysis of the persuasiveness of the medical opinions is also supported by substantial evidence. *Id.* at 17-22. Defendant concludes by arguing that the issues Plaintiff raises amount to a disagreement about the ALJ's assessment of the evidence, which should be upheld according to the deferential standard of review. *Id.* at 22-25.

In his reply brief, Plaintiff argues that he was previously found to be disabled, and there is a presumption that he is still disabled absent evidence of improvement. Dkt. No. 16 at 1. Plaintiff also argues that the ALJ ignored evidence from the VE, which would indicate an eroded occupational base for someone with Plaintiff's RFC. *Id.* at 4. Plaintiff reiterates his contention that the ALJ failed to appropriately analyze the opinion evidence, and that Defendant's arguments are post-hoc rationalizations. *Id.* at 5. Plaintiff argues that the ALJ mischaracterized the evidence of record and did not consider evidence contrary to his conclusions. *Id.* at 6-7.

## V. ANALYSIS

### 1. HALLEX

The Social Security Administration's HALLEX

> conveys guiding principles, procedural guidance, and information to hearing level and Appeals Council staff. HALLEX defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the hearing, Appeals Council, and civil action levels. It also includes policy statements resulting from Appeals Council *en banc* meetings under the authority of the Appeals Council Chair.

HALLEX I-1-0-1. Plaintiff cites HALLEX as if it is binding authority. *See* Dkt. No. 9 at 9-10, 11; Dkt. No. 16 at 2-3. Plaintiff also cites to the SSA's Program Operations Manual System ("POMS") as a source of binding authority. *See* Dkt. No. 9 at 9, 10; Dkt. No. 16 at 1, 2-3. Defendant cites HALLEX once, as secondary support for the argument that "[t]he ALJ was not required to obtain the file from Plaintiff's previous claim, which was filed more than 12 years prior to Plaintiff's application in the instant case." Dkt. No. 15

at 11-12 (citing <u>DeChirico v. Callahan</u>, 134 F.3d 1177, 1184 (2d Cir. 1998); HALLEX I-2-1-13).

Whether HALLEX or the POMS are binding on the Social Security Administration is not settled law; the Second Circuit has never held that a failure to comply with HALLEX is an error requiring remand. *See Mark P. O. v. O'Malley*, 5:23-CV-00186 (MAD), 2024 WL 1219632 at *13-14 (N.D.N.Y. Mar. 20, 2024). However, "the Second Circuit has repeatedly held 'where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required.'" *Id.* at *14 (quoting, *inter alia*, *Salazar v. King*, 822 F.3d 61, 76 (2d Cir. 2016)).

Most of the portions of HALLEX plaintiff cites do not apply here, and the section that is applicable does not necessary require remand for a failure to strictly adhere to its requirements. Plaintiff has raised arguments under HALLEX I-2-1-13, which explains when "it will be necessary for the [ALJ] to review a prior claim(s) file in order to fully adjudicate a current claim"; I-2-4-40, which "explains administrative res judicata as it applies under the Social Security Act"; and I-2-9-10, which explains how a claimant may expressly or impliedly request that an ALJ "reopen and revisit a final determination or decision." HALLEX I-2-1-13, 2014 WL 2600156, HALLEX I-2-4-40, 2005 WL 1870458, HALLEX I-2-9-10, 1993 WL 643070. Plaintiff also cites to POMS GN 03101.160, which explains when and how *res judicata* is applied in the administrative decision-making process. POMS GN 03101.160, available at https://secure.ssa.gov/poms.nsf/lnx/0203101160 (last visited Aug. 15, 2024).

**2. HALLEX 1-2-1-13(B)(1), HALLEX I-2-4-40, and HALLEX I-2-9-10**

Section I-2-1-13(B)(1) of HALLEX does not apply because none of the mandatory conditions for review of a prior claim file are met.  The mandatory conditions are as follows: "The pending claim is before an ALJ based on a continuing disability review," "[t]he pending claim involves a collateral estoppel issue," "[t]he pending claim involves a possible reopening or res judicata issue," "[t]he ALJ must consider findings of an ALJ or the Appeals Council on a prior claim(s) to comply with an Acquiescence Ruling," and "[f]raud or similar fault may be involved in the current or prior claim." HALLEX I-2-1-13, 2014 WL 2600156.  The mandatory conditions are not met because, respectively: the pending claim involves a new application, not a continuing disability review (*See* T. at 193-199 (Plaintiff's application for SSI, alleging an onset date of 12/5/ 2020)); the pending case does not involve a collateral estoppel issue (*See* T. at 259-509 (The earliest notes in the present record, dated 10/8/2020, post-date the ALJ's 8/13/2010 decision in the 2009 claim by a decade. In other words, the evidence in the present record is entirely new)); the present claim does not involve a reopening or *res judicata* issue, as discussed in greater detail in this section; and the Appeals Council has not issued an Acquiescence Ruling (*See* T. at 1-6, 7-1, 190-92 (No communication to or from the Appeals Council references an Acquiescence Ruling, which is an explanation of "how SSA will apply a holding by a United States Court of Appeals that is at variance with [their] national policies for adjudicating claims."  Social Security Administration, ACQUIESCENCE RULING DEFINITION, *What are Acquiescence Rulings (ARs)?, available at https://www.ssa.gov/regulations/def-ar.htm* (last visited Aug. 23, 2024)); and finally, there is no reference by either party to fraud (*See* Dkt. Nos. 9, 15, 16).

Next, HALLEX I-2-4-40 does not apply because there is no *res judicata* issue present in this case. "The doctrine of *res judicata* applies in that [the SSA] have made a previous decision under this subpart about your rights on the same facts and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial action." 20 C.F.R. § 416.1457(c)(1). HALLEX I-2-4-40 sets forth the relevant three-part test: first, "[t]here has been a previous determination or decision under the same subpart with respect to the same party," second, "[t]he previous determination or decision was based on the same facts and on the same issue(s)," and third, "[t]he previous determination or decision has become final by either administrative or judicial action." HALLEX I-2-4-40(B), 2005 WL 1870458. The first and third prongs of this test are met in the present case, but the second is not.[4] The facts and issues in this appeal differ from the facts and issues in Plaintiff's 2009 application: namely, Plaintiff alleges an onset date more than a decade after the onset date in his 2009 application. *See* T. at 81, 193. Further, as mentioned above, all of the medical evidence in the present case post-dates the ALJ's decision in Plaintiff's prior claim by at least a decade. *See* T. at 259-509. Therefore, the facts and issues in here are new, and there is no *res judicata* issue.

The relevant section of POMS GN 03101.160 does not apply for similar reasons. POMS GN 03101.160 states that, "[i]f a new application is filed with the same issue by the same party and no new facts or evidence, the application may be denied on the basis of res judicata." POMS GN 03101.160(B). However, "[i]f anything has changed

---

[4] The first prong is met because Plaintiff was previously found disabled on an application for SSI under Title XVI. T. at 80-86. The third prong is met because the decision became final through administrative action. T. at 85-86.

14

(including law and regulations), we cannot apply res judicata, but must make a determination or decision based on the merits of the application." Id. The facts of Plaintiff's application have changed, as he alleges a new disability date, and he has provided the Social Security Administration with entirely new evidence. See T. at 81, 193, 259-509. The guidance on res judicata as a basis for denial in POMS GN 03101.160 does not apply to the present case.

Next, HALLEX I-2-9-10 does not apply because Plaintiff did not expressly nor impliedly request that the ALJ reopen and revise a final determination or decision. "A claimant may expressly request that an administrative law judge (ALJ) reopen and revise a final determination or decision, and the ALJ will either grant or deny the claimant's request." HALLEX I-2-9-10(A), 1993 WL 643070. Plaintiff never made such request. *See* T. at 29-41 (no oral request for reopening submitted at the administrative hearing), 87-192 (no written request for reopening submitted to the ALJ or the Appeals Council). Plaintiff also did not impliedly request reopening because he never "submit[ted] additional evidence or information that implies [he] [requested] reopening and revision of a prior determination or decision." HALLEX I-2-9-10(B), 1993 WL 643070. Specifically, Plaintiff did not "allege[] an onset date within a previously adjudicated period"; instead, he alleged an onset date a decade later than the previously-adjudicated period, and he did not send "the ALJ new and material evidence that related to the earlier period at issue." T. at 81, 193; *see* T. at 190-92 (Plaintiff's Request for Review of Hearing Decision/Order was submitted without new evidence).

In sum, sections I-2-1-13(A), I-2-4-40, and I-2-9-10 are not applicable. There is no *res judicata* issue in the present case, Plaintiff did not expressly or impliedly request

reopening of a prior decision, and the mandatory conditions for considering evidence in a prior claim were not met.

### 3. HALLEX 1-2-1-13(B)(2)

The facts of the present case are such that the conditions for optional review of a prior claim file are met, and such review would have benefitted the ALJ in making his disability determination.  "OHO staff must consult with an ALJ about obtaining a prior claim(s) file when it may be necessary for a full adjudication of the issues before the ALJ."  HALLEX I-2-1-13(B), 2014 WL 2600156.  If "[t]here is a need to establish a longitudinal medical . . . history; or [t]he impairment is of a nature that evidence from a prior claim(s) file could make a difference in establishing whether disability is present in the current claim," "[a]n ALJ will generally find that evidence in a prior claim(s) file is necessary for a full adjudication of the issues."  *Id. However, HALLEX I-2-1-13 does not require remand for an ALJ's "failure to obtain and consider evidence in a prior claim(s) file" when "a prior claim(s) file is not required."  Id*.  ALJ's are merely warned that "failure to obtain and consider evidence in a prior claim(s) file may constitute a reason for remand from the Appeals Council (depending on the facts of the case)."  *Id.*  In this case, Plaintiff raised the issue of administrative res judicata in his request for review to the Appeals Council, and the Appeals Council declined to remand on that basis.  *See* T. at 191, 1.  HALLEX I-2-1-13 does not clarify what, if any, action should be taken in this situation.  As discussed in the following section, the ALJ's failure to include environmental limitations in Plaintiff's RFC or discount them in his RFC determination provide clear and separate grounds for remand.

In 2010, ALJ John M. Lischak concluded that Plaintiff would be "unable to perform the requirements of even sedentary work on a consistent and competitive basis." T. at 83. Evidence from 2008 demonstrated that "[d]egenerative changes were observed about the right hip." *Id.* Evidence from 2009 demonstrated "degenerative changes in the more proximal lumbosacral spine." *Id.* In other words, Plaintiff's condition appeared to be deteriorating as of ALJ Lischak's August 13, 2010, decision. ALJ Lischak also relates that Plaintiff suffered "muscle spasms and vertebral point tenderness," "dextroconvex scoliosis of the thoracic spine, with straightening of the lumbar lordosis, and disc space narrowing at L5-S1," "midline tenderness to palpation of the lumbar vertebrae" with "[m]uscle spasms . . . of the lumbar spine," "decreased strength and sensation in the lower extremities bilaterally," "large inferiorly extruded right paracentral; disc herniation with an associated free fracture fragment at L5-S1," "prominent osteochondral lesions with multiple cystic components," "[a] large amount of edema . . . in the medial talar dome," and chronic pain. T. at 83-84.

Here, ALJ Eldred case did not have access to this evidence in reaching Plaintiff's RFC. The only material available from Plaintiff's 2009 application is the ALJ's decision, which indicates that Plaintiff was disabled by pain and deteriorating orthopedic injuries. *See* T. at 83-84. This evidence "could make a difference in establishing whether disability is present in the current claim." HALLEX I-2-1-13(B), 2014 WL 2600156. Specifically, the ALJ in the present case discounted the severity and limiting effects of Plaintiff's pain, stating "the evidence does not fully support the claimant's allegations regarding the extent of the functional limitations caused by his symptoms." T. at 18. The evidence the ALJ summarized in Plaintiff's 2009 claim would seem to significantly

bolster his credibility, but the ALJ chose not to review it.  Further, the ALJ relied on a lack of "ongoing treatment from an orthopedic specialist," noting "[t]he record also shows that the claimant has declined physical therapy."  T. at 19 (citing T. at 310).[5]  The ALJ in Plaintiff's 2009 claim summarized several years of records indicating significant treatment, including surgical interventions and medical implantations, but ALJ Eldred did not review this evidence.  *See* T. at 83-84.

Courts in this Circuit have not consistently remanded for failures to follow HALLEX nor have they uniformly rejected the argument that HALLEX is binding authority.  In *Molina v. Colvin*, the plaintiff "was previously determined to be eligible for SSI benefits," which "were stopped because he was sent to prison, not because he stopped being disabled."  *Molina v. Colvin*, No. C13-CV-6532 (CJS), 2014 WL 4955368, at *7 (W.D.N.Y. Oct. 2, 2014).  The *Molina* decision cited HALLEX I-2-1-13(B)(2) to support its holding that "the Commissioner should make a further effort to locate the prior claim file, since that obviously could shed light on Plaintiff's condition."  *Id.* at *7, *7 n.11.  In *Dale A. M. v. Comm'r of Soc. Sec.*, the Court cited HALLEX I-2-1-13(B)(1), (2).  *Dale A. M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1150 (FJS), 2021 WL 1175160, at *11 (N.D.N.Y. Mar. 29, 2021).  However, the Court held there was no procedural error under HALLEX I-2-

---

[5] Although true, records from SEMC – MG – Family Medicine Center reveal that Plaintiff later accepted a referral to physical therapy.  T. at 329, 332, 334.  Treatment notes from SEMC – Hospital further explain Plaintiff's decision to pursue conservative treatment: Plaintiff's pain was caused by "a car accident in 1999," and "he is not interested in [physical therapy] as it did not help him when he first had the accident." T. at 459.  SSR 16-3p requires an ALJ to consider why a claimant "may not comply with treatment or seek treatment consistent with the degree of his or her complaints."  SSR 16-3p, Policy Interpretation, *How we will determine if an individual's symptoms affect the ability to perform work-related activities* . . . .  Plaintiff does not raise this issue; he only cites SSR 16-3p for the proposition that an ALJ must consider all relevant evidence.  Dkt. No. 9 at 11.  Although this specific issue was not raised, and, therefore, waived, it is not cause for remand.  However, the ALJ's failure to properly apply SSR 16-3p reduces the undersigned's confidence "'that the substance of the [regulation] was not traversed.'"  *Loucks v. Kijakazi*, 21-1749, 2022 WL 2189293, at *2 (2d Cir. Jun. 17, 2022) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019)) (alteration in original).

13(B)(2) when the ALJ "reviewed Plaintiff's medical records from before, during, and after the alleged disability period." *Id.* In the present case, the ALJ was put on notice that Plaintiff's current conditions appeared to stem from a "car accident in South Carolina, in Myrtle Beach," and that these conditions resulted in Plaintiff being "put on SSI in 2007." T. at 33, 37.[6] On the other hand, Plaintiff's alleges December 5, 2020, as the beginning of his current period of disability, not a date in 2007. T. at 193.

Conversely, in *Frazier v. Comm'r of Soc. Sec.*, the Court noted that "'HALLEX is simply a set of internal guidelines for the SSA, not regulations promulgated by the Commissioner,' and therefore . . . a failure to follow HALLEX does not necessarily constitute legal error.'" *Frazier v. Comm'r of Soc. Sec.*, 16 Civ. 4320 (AJP), 2017 WL 1422465, at *19 (S.D.N.Y. Apr. 20, 2017) (quoting *Gallo v. Colvin*, 15 Civ. 9302 (AT/BCM), 2016 WL 7744444, at *12 (S.D.N.Y. Dec. 21, 2016)). In *Tran v. Colvin*, the Court adopted a Report and Recommendation in which the Magistrate Judge referenced HALLEX I-2-1-10(D)(3), but "noted that the HALLEX Manual guidelines are not binding." 1:15-CV-0559 (GTS/WBC), 2016 WL 5408159, at *2 (N.D.N.Y. Sep. 28, 2016).

Given the lack of certainty in case law regarding HALLEX as binding authority on the SSA together with the fact that HALLEX I-2-1-13 does not clearly require remand for failure to obtain a prior case file when the optional conditions are met, the undersigned declines to conclude that the ALJ's failure to do so, without more, presents a basis for

---

[6] Plaintiff's statement that he was "put on SSI in 2007" cannot be verified based on the present record. T. at 37. Plaintiff has filed for Social Security benefits five times. *See* T. at 204. The present claim has an AOD in 2020, Plaintiff's 2021 claim corresponds to the AOD in 2009, and Plaintiff's 2009 claim corresponds to one of the AODs in 2007. *See* T. at 193, 81, 204. Plaintiff may have filed for SSI in 2007, and that filing may correspond to one of the two remaining AODs, but the present record only demonstrates that he received SSI for the period from 2009 to 2015, after the favorable administrative decision in 2010. *See* T. at 204, 81, Dkt. No. 9 at 8-9.

remand.  However, HALLEX remains a source of persuasive authority, and the ALJ's failure to adhere to it, especially under these facts, reduces the undersigned's confidence in his conclusions.

### 4. Environmental Limitations

The ALJ's assessment of the medical opinions is not supported by substantial evidence, and the prejudicial effect of this error on the RFC determination and the ALJ's Step Five analysis requires remand.  Every medical opinion which addresses environmental limitations cautions against exposing Plaintiff to respiratory irritants.  *See* T. at 52, 71, 348.  Two prior administrative medical findings ("PAMFs"), by state agency reviewing physicians J. Lawrence, M.D., and G. Wang, M.D., and the report of consultative examining physician John Fkiaras, M.D., note that Plaintiff suffers from asthma.  *Id.*  Dr. Lawrence assessed that Plaintiff should "avoid concentrated exposure" to "[f]umes, odors, dusts, gases, poor ventilation, etc.," as well as extreme cold and humidity.  T. at 52.  Dr. Wang assessed the same environmental limitations.  T. at 71.  Dr. Fkiaras assessed that Plaintiff should "avoid smoke, dust, and known respiratory irritants."  T. at 348.  Dr. Fkiaras did not assign any limitation to Plaintiff's exposure to cold or humidity.  *See id.*

At a November 6, 2020, visit to SEMC – MG – Family Medical Center, Plaintiff reported that "he believes he has asthma and he has used [an] inhaler in the past."  T. at 307-08.  However, Frangel Arias-Sanchez, M.D., and Rebecca Lavalley, M.D., "[q]uestioned [the] diagnosis of asthma," and "[o]rdered PFT for diagnostic assessment." T. at 310.  The providers noted that Plaintiff "has [a] history of smoking and significant nail clubbing which can indicate chronic lung disease."  T. at 310.  Plaintiff was

"[p]ositive for shortness of breath," but "[n]egative for cough and wheezing" during that visit.  T. at 308.

Plaintiff underwent a "CT chest screening for lung cancer" on January 20, 2022. T. at 502.  The CT scan revealed

> Apical pleural blebs. Interstitial focus of density in the right middle lobe associated with the bronchiectasis the process renders evaluation of the underlying nodules if present fairly limited. Questionable nodule versus linear scar in the medial portion of the anterior segment right upper lobe. Similar finding in the lateral segment of the right middle lobe abutting the pleura scarring in the lingula. Questionable nodule in the midportion of the left lower lobe measuring 4 mm.

T. at 502-03.  These findings "require[d] additional testing or imaging."  T. at 504.  On reexamination on June 2, 2022, "[n]o suspicious nodule [was] seen," indicating a "resolved inflammatory or infectious process."  T. at 507.  However, John Ellis, M.D., noted "prominent paraseptal emphysematous changes in the lung apices*." Id.*

The primary care physician recommended that plaintiff "[c]omplete pulmonary function test with bronchodilator" and "[o]rdered PFT for diagnostic assessment."  T. at 310.  On May 5, 2022, Plaintiff presented at SEMC-Hospital with "pressure-like left-sided chest pain for one and [a] half month[s]. Associated with numbness in [his] left arm, pain in left neck and jaw," which was "[a]lso associated with diaphoresis and nausea and vomiting."  T. at 483.  Plaintiff's symptoms "[i]mproved with rest and taking deep breath[s]."  *Id.*  Phyu Thwe, MD, recorded that "Patient smokes since 12 years of age. One or two packs per day."  *Id.*  Plaintiff was "[p]ositive for chest tightness" and "chest pain" on examination.  *Id.*

However, Plaintiff's medical records do not demand one conclusion on this issue; on examination, Plaintiff most often denied or did not present with respiratory issues.

*See* T. at 299-338.  Plaintiff's June 8, 2020; November 5, 2020; and November 6, 2020, records from SEMC – MG – Family Medical Center note "Pulmonary/Chest: Effort normal and breath sounds normal. No respiratory distress. He has no wheezes. He has no rales."  T. at 301, 304, 308.  On November 12, 2020, Plaintiff's primary care physician noted "Breath sounds: Normal breath sounds. No stridor. No wheezing or rhonchi," and on January 14, 2021, they recorded "Breath sounds: No wheezing, rhonchi or rales."  T. at 324, 329.  On March 17, 2021, Plaintiff's primary care physician noted "Respiratory: Negative for cough, shortness of breath and wheezing."  T. at 334.

Generally speaking, "[i]n our review, we defer to the Commissioner's resolution of conflicting evidence."  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (citing *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)).  However, in this case, the ALJ did not identify the conflict between the evidence summarized in the preceding paragraphs.  *See* T. at 18-21.  The ALJ noted "the claimant did not allege any respiratory limitations during his hearing testimony," which is true but misleading: the ALJ, not the claimant, controls the course of the administrative hearing, and the ALJ did not elicit testimony from Plaintiff regarding his respiratory issues.  T. at 20; *see* T. at 29-37.  The ALJ was aware of these environmental limitations: his only hypothetical to the VE incorporated them.  T. at 39-40.  The consistency of the PAMFs and medical opinions regarding the existence of these environmental limitations, combined with the ALJ's failure to identify contradictory evidence in the record or elicit testimony on this issue from Plaintiff or the VE, leaves the ALJ's determination on this issue so unavailing that "a reasonable factfinder would have to conclude otherwise."  *Brault v. Comm'r of*

*Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012).  The ALJ's RFC determination is,

therefore, not supported by substantial evidence.

This error also implicates a failure to consider the persuasiveness of the PAMFs

and the medical opinion according to the correct legal standard.  Although "'an ALJ

does not have to state on the record every reason justifying a decision' and 'is not

required to discuss every single piece of evidence submitted,'" she must at the very

least "articulate in [her] determination or decision how persuasive [she found] all of the

medical opinions and all of the prior administrative medical findings."  *Ryan v. Comm'r*

*of Soc. Sec.*, No. 21-2947-cv, 2022 WL 17933217 at *2 (2d Cir. Dec. 27, 2022) (citing

*Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012)).  An ALJ must pay

special attention to "explain how [they] considered the supportability and consistency

factors" defined in 20 C.F.R. §§ 416.920c(c)(1)-(2).  20 C.F.R. § 416.920c(b)(2).

Supportability concerns the relevancy of "the objective medical evidence and supporting

explanations presented by a medical source" in supporting "his or her medical

opinion(s) or prior administrative medical finding(s)," and consistency concerns how

"consistent a medical opinion(s) or prior administrative medical finding(s) is with the

evidence from other medical sources in the claim."  *Id.* §§ 416.920c(c)(1)-(2).

The ALJ determined that the portions of Drs. Wang and Lawrence's PAMFs

which assign environmental limitations were "unpersuasive."  T. at 20.  Likewise, the

ALJ determined that the portion of Dr. Fkiaras' opinion which concerned environmental

limitations caused by asthma was "unpersuasive."  *Id.*  The ALJ concluded the

consistency of both PAMFs and Dr. Fkiaras' opinion was low, stating "[t]he medical

evidence does not document significant difficulties due to asthma, and the claimant did

not allege any respiratory limitations during his hearing testimony."  T. at 20.  As discussed above, the ALJ failed to articulate and properly address the contradictory evidence, and his conclusions regarding Plaintiff's testimony are unavailing.  This leaves the undersigned unable to "'glean the rationale of [the] ALJ's decision.'"  *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (summary order) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).  Although "the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record," it must be "supported by substantial evidence."  *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

Additionally, this error was harmful because the only question posed to the VE incorporated these environmental limitations.  *See* T. at 39-40.  The VE testified that she was not able to identify any jobs, performed at the medium exertion level, which could accommodate the stated set of environmental and postural limitations.  T. at 40.  The ALJ did not ask any follow-up questions.  *Id.*  The ALJ ignored the VE's expert testimony in his hearing decision and based his conclusion at Step Five on the Medical-Vocational Guidelines.  T. at 21-22.  Without properly addressing the contradictory evidence regarding Plaintiff's environmental limitations, the ALJ's analysis at Step Five is devoid of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (internal quotation marks and citation omitted).

On remand, the Commissioner should more thoroughly address the state agency reviewing physicians' and consultative examiner's unanimous assessment of respiratory-related environmental limitations, either to incorporate them in the RFC and

determine if significant jobs still exist for Plaintiff in the national economy, or to contradict them with substantial evidence.

## VII. CONCLUSION

Based on the foregoing, the ALJ's decision was not based upon correct legal standards, and substantial evidence does not support her determination that Plaintiff was not under a disability within the meaning of the Social Security Act.

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) be **GRANTED**, Defendant's cross motion for judgment on the pleadings (Dkt. No. 15) be **DENIED**, and the Commissioner's decision be **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings; and it is

**ORDERED**, that the Clerk serve this Report-Recommendation & Order in the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs*., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

Dated: August 28, 2024
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge